Argued and submitted August 25, affirmed December 13, 1989, reconsideration denied
February 9, petition for review denied March 27, 1990 (309 Or 521)

## STATE OF OREGON,
*Respondent,*

*v.*

## DONALD LEE BECHTOLD,
*Appellant.*

(88-CF-009; CA A49971)

783 P2d 1008

Ralph Currin, Judge pro tempore.

Steven V. Humber, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

## WARREN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns as error the trial court's denial of his motion to suppress. We affirm.

Defendant was a passenger in a pickup truck that was stopped because of the driver's erratic driving. After the vehicle had been stopped, Officers Elkins and Warren determined that the driver was under the influence of either methamphetamine or cocaine. They were familiar with the pickup and knew that there was an outstanding arrest warrant for the owner for possession and manufacture of methamphetamine. The owner had been described as armed and dangerous. The officers knew that neither the driver nor defendant was the owner of the pickup.

With the driver's consent, the officers searched the cab of the truck, where they found a pipe with marijuana residue. Elkins also noticed some makeshift laboratory stands in the back of the truck. During the search, defendant remained hunched over inside the cab and appeared nervous. During a pat down for weapons, Warren lifted defendant's shirttail to check his waistband for weapons. In the waistband, he found a small, opaque sandwich box. With the aid of a flashlight and the police car's headlights, the officers determined that the box contained plastic bags holding a white powdery substance.

The officers arrested defendant for possession of a controlled substance, ORS 475.992(4), and transported him to the police station. There, under ordinary light, they could see more clearly that the bags in the box contained white powder. Without first obtaining a warrant, the officers opened the box and confirmed that the substance was methamphetamine.

Defendant does not challenge the stop of the vehicle or the consent search of the cab. Warren testified that, during a weapons pat down, it is not uncommon for him to lift a suspect's shirt to check for weapons. He also testified that he had previously seen drugs carried in a manner similar to the way in which defendant was carrying the small plastic box and that, after the box was examined under lights, he was certain that there was either cocaine or methamphetamine in it.

■ Defendant argues that the evidence of the methamphetamines should have been suppressed, because the search of his person, the seizure and the subsequent search of the box were unlawful. He argues that the officers had no basis to frisk him for weapons under ORS 131.625(1):

> "A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present."

The officers knew that there was an arrest warrant for the owner of the pickup for the manufacture and transportation of methamphetamines. They saw equipment commonly used for such manufacture in the back of the truck and, from their training and experience, knew that people involved in the manufacture and transportation of that drug commonly carry weapons. The driver showed signs that he was under the influence of methamphetamine or cocaine. In addition, defendant was nervous and hunched over, as though he might be hiding something. The circumstances justified the suspicion that defendant was armed and dangerous. *See State v. Bates,* 304 Or 519, 526, 747 P2d 991 (1987).

■ Defendant next argues that the frisk was overly intrusive, citing ORS 131.605(2), which defines a frisk as "an external patting of a person's outer clothing." By raising defendant's shirt, Warren failed to follow the statute strictly. However, had he first conducted a pat down at the waist, he would have felt the hard plastic box and would have been entitled to lift the shirt to pull it out. *State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1985).[1] The method of search used was not overly intrusive.

In order to be able lawfully to seize the container, the officers had to have probable cause to believe that it contained contraband. *State v. Elkins,* 245 Or 279, 284, 422 P2d 250 (1966). Defendant does not challenge the trial court's finding that, through the lid, the officers saw sealed plastic baggies

---

[1] During a pat down for weapons, the officer found a small box in the defendant's pocket. The officer had information that, a week earlier, the defendant had carried a knife. We stated in *dictum* that the officer had the authority to remove the box from the defendant's pocket and to open it in order to protect his safety. *State v. Ridderbush, supra,* 71 Or App at 422.

that appeared to contain a white powder.[2] Warren testified that he had seen drugs packaged that way before. The existence of the substance concealed on defendant's body, added to the other circumstances that we have discussed previously, which associated defendant with the manufacture and transportation of methamphetamine, created probable cause to believe that the box contained contraband and gave the officers the right to seize it.

■ Defendant argues that Elkins unlawfully used the technological enhancement of a flashlight to search the outside of the box. Elkins testified that, in the ordinary light of the police station, he could see through the top of the box even more clearly than with the flashlight. It is not unlawful for an officer to use a flashlight to examine the outside of a container and to see no more than is visible under normal indoor lighting.[3]

■ Defendant next argues that the officers unlawfully opened the box without a warrant. In *State v. Owens, supra,* 302 Or at 206, the Supreme Court held that there is no privacy interest in transparent containers or other containers that otherwise announce their contents. In *Owens,* a transparent vial containing white powder announced its contents. Similarly, in this case, the box allowed enough visibility through the top to announce its contents. A warrant was not required.

Affirmed.

**BUTTLER, P. J.,** dissenting.

Assuming that the officer reasonably suspected that defendant was "armed and presently dangerous to the officer," ORS 131.625(1), he had the right to conduct an "external pat-down" of defendant's "outer clothing." *See* ORS 131.605(2). Assuming further that the officer was

---

[2] An examination of the box admitted in evidence shows, as the dissent points out, that the box is very difficult to see through. That does not defeat the trial court's fact findings, which defendant does not challenge, that the officers could see the contents.

[3] In *State v. Jackson,* 296 Or 430, 438 n 4, 677 P2d 21 (1984), the Supreme Court stated that it was an an open question whether the use of a flashlight at night to illuminate the interior of a stopped vehicle violates Article I, section 9. To be unlawful, a search must violate a protected privacy interest. *State v. Tanner,* 304 Or 312, 745 P2d 757 (1987). There is no privacy interest in the exterior of a box removed from a defendant during a lawful frisk. *See State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986).

authorized to raise defendant's shirt in order to facilitate a pat-down of defendant's waist, he was authorized to remove the *opaque* plastic sandwich box to determine whether it contained a weapon. That is what the trial court properly concluded; the court then observed, accurately, that "when you heft it and feel" it, there "probably would be some question as to whether a weapon would be in that."

Examination of the opaque plastic sandwich box should have ended there. Obviously, it did not contain a weapon. This case is indistinguishable from *State v. Gressel*, 276 Or 333, 554 P2d 1014 (1976). There, the defendant was validly stopped on a reasonable suspicion that he had committed a burglary. The officer patted him down for weapons and, although he found none, during the course of the frisk he felt soft bulges in two of the defendant's pockets. The officer suspected that the bulges were rolls of currency that might have been taken in the burglary. When the defendant refused to consent to a search, the officer reached into one of the defendant's pockets and pulled out a bag of marijuana, which formed the basis of the charge on which the defendant was convicted. The Supreme Court reversed, stating:

> "It is our opinion that after Grimes stopped defendant, questioned him and fruitlessly searched him for weapons, the officer did not have probable cause to search further in order to ascertain the contents of defendant's pockets."

Here, as in *Gressel*, the officer searched without probable cause after determining that defendant was not armed. *See State v. Owens*, 302 Or 196, 729 P2d 524 (1986).

Apparently, although it is not clear, the trial court found that the officer was authorized to seize the box, even after it was obvious that it did not contain a weapon, and to search it. It did not find or conclude that the officer had probable cause to do so until *after* the search;[1] until then, the officer testified that he only *suspected* that the box contained a controlled substance. The court, however, concluded:

> "That the * * * container discovered in defendant's pants

___

[1] If the majority's statement, 99 Or App at 597 n 2, that the trial court found that the officers could see the contents (even though it concedes that we cannot), is intended to say that they did so *before* conducting a search of it with high-powered lights, it is wrong. Even if the court had made such a finding, there is *no* evidence that would support it.

was within the scope of permissible frisk, either in the interests of officer safety or as a pat-down incident to arrest."

The conclusion that the *search* of the opaque plastic box was permissible "as a pat-down incident to arrest" is inconsistent with the trial court's finding that, until the search, the officer had only a reasonable suspicion that defendant had committed a crime. That finding is supported by the officer's testimony that he only *suspected* that the box contained drugs and that it was not until after he had shone a "SL20, 20,000 candle power flashlight" and his car's headlight on or through it that he "felt certain" of its contents. Defendant was then arrested—after the search had taken place.

The officer's use of high powered lights to attempt to ascertain the contents of the box exceeded the scope of a permissible frisk for weapons. It constituted a search, as did the opening of the box at the police station. One needs only to look at the box (which is exhibit 3) to know that it is *totally* opaque and that it did not "announce its contents." Its contents were not in plain view and it was not a unique container, such as a "paperfold," ordinarily used to carry controlled substances. That the police conduct at the scene and at the police station constituted a search within the meaning of Article I, section 9, is made clear by *State v. Owens, supra,* in which the court said:

"Article I, section 9, protects privacy and possessory interests. A 'search' occurs when a person's privacy interests are invaded. When the police lawfully seize a container, they can thoroughly examine the container's exterior without violating any privacy interest in the owner or the person from whom the container was seized. For example, the police can observe, feel, smell, shake and weigh it. Furthermore, not all containers found by the police during a search merit the same protection under Article I, section 9. Some containers, those that by their very nature announce their contents (such as by touch or smell) do not support a cognizable privacy interest under Article I, section 9. Transparent containers (such as clear plastic baggies or pill bottles) announce their contents. The contents of transparent containers are visible virtually to the same extent as if the contents had been discovered in the 'plain view,' outside the confines of any container. Applying the doctrine of 'plain view' to transparent containers, we hold that no cognizable privacy interest inheres in their contents, and thus that transparent containers can be opened and their

contents seized. No warrant is required for the opening and seizure of the contents of transparent containers or containers that otherwise announce their contents. Under the Oregon Constitution, a lawful seizure of a transparent container is a lawful seizure of its contents." 302 Or at 206.

Because the searches and the seizure were without a warrant and there is no applicable exception to the warrant requirement, they were invalid. Accordingly, I dissent.