Argued and submitted December 23, 1997; resubmitted En Banc June 10, reversed and remanded October 28, 1998

# STATE OF OREGON,
*Respondent,*

*v.*

# WILLIAM D. KRUCHEK,
*Appellant.*

## (95-12-39452; CA A92706)

969 P2d 386

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. On the briefs were Sally L. Avera, Public Defender, and Eric M. Cumfer, Deputy Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

ARMSTRONG, J.

Edmonds, J., dissenting.

## ARMSTRONG, J.

Defendant appeals his conviction for possession of a controlled substance, contending that the trial court erred when it denied his motion to suppress evidence of marijuana found in a plastic cooler. The trial court ruled that, because an odor of marijuana had emanated from the cooler,

> "the contents of [the] cooler * * * [had announced] themselves to the officer. * * * [Hence,] defendant's privacy interests were not invaded when the officer opened the cooler."

The trial court apparently based its ruling on *State v. Owens*, 302 Or 196, 729 P2d 524 (1986), in which the Supreme Court held that

> "when there is probable cause to believe that a *lawfully seized transparent container* contains a controlled substance, opening the container, removing a modest quantity of its contents and subjecting it to chemical analysis for the sole purpose of confirming that it is a controlled substance, is not a 'search' or 'seizure' under the Oregon Constitution."

*Id.* at 207 (emphasis added). We conclude that *Owens* does not apply to this case and, accordingly, reverse the trial court.

The operative facts are undisputed. Portland Police Officer Gunderson parked his patrol car to watch an apartment for drug activity. He saw defendant's van pull up and park outside the apartment but did not see anyone get out of the van. He then watched the van pull away from its parking spot and make an unsignaled left turn. Gunderson pulled out behind the van, turned on his overhead lights and stopped defendant for the traffic infraction.

Gunderson approached the van and asked defendant for his driver's license, registration and proof of insurance. Defendant could not produce proof of insurance, so Gunderson gave him a traffic citation for driving uninsured. *See* ORS 806.010. In accordance with department policy, Gunderson then impounded the van.[1] After impounding the

---

[1] Gunderson testified at the suppression hearing that officers who issue citations for driving uninsured are "ordered to have the auto towed and have it held in the city impound until such time that the driver or the owner can present proof of insurance for that vehicle."

van and in anticipation of its being towed, Gunderson began making an inventory of its contents. At the hearing on the motion to suppress, he testified that his intention was

> "to go through the van, to make note of any weapons that [might] be present, perhaps use [*sic*] those for safekeeping so that a tow driver is not [h]armed by them. It is also to locate any valuables on behalf of the person who owns the van so that they are accounted for and noted in a police report in case there were to be some type of a problem at the time the van was picked up."

While inside the van, Gunderson noticed a strong odor of freshly cut marijuana. He concluded that the odor came from a small, plastic cooler located at the back of the van. He opened the cooler and found a large amount of marijuana, a scale and an automatic timer.

Defendant moved to suppress the evidence of the contents of the cooler, claiming that Gunderson should not have opened the cooler without first obtaining a warrant. The state responded that the warrantless search was valid, either because the automobile exception to the warrant requirement applied or because, under *Owens*, opening the cooler was not a "search" subject to the warrant requirement. The trial court concluded that the automobile exception did not apply but agreed with the state on its second theory. Defendant then agreed to a stipulated facts trial and was found guilty of possession of a controlled substance.

■ As a preliminary matter, we note that in *Owens* the Supreme Court held that, when there is probable cause to believe that a *lawfully seized* transparent container contains a controlled substance, opening the container for the limited purpose of confirming that belief is not a search or seizure of the container's contents under the Oregon Constitution, because opening the container does not result in any further intrusion into the owner's privacy or possessory interests. It follows from that holding that, before the police can open such a container, they must first have lawfully seized it as evidence of a crime. An inventory such as the one that took place in this case is not a search nor a seizure—rather, it is a limited administrative act designed to protect a person's property while in police custody. *See, e.g., State v. Bean*, 150

Or App 223, 229, 946 P2d 292 (1997), *rev den* 327 Or 448 (1998).

■   The fact that an officer has authority to conduct an inventory involving a closed container does not mean that the officer has lawfully seized the container, as required under *Owens*. If, in the course of an inventory, an officer develops probable cause to believe that a closed container contains a controlled substance, the officer cannot seize the container as evidence of a crime without first obtaining a warrant or establishing that an exception to the warrant requirement permits the seizure without a warrant.

■   In this case, defendant did not argue to the trial court or to us that the state had failed to establish a lawful basis to seize the cooler as evidence of a crime. For that reason, we must assume that the state met that requirement. It is important to recognize, however, that *Owens* did not dispense with the requirement that the container be lawfully seized as evidence of a crime and not merely be accessible to the police in an inventory. With that in mind, we turn to whether the officer violated Article I, section 9, by opening the cooler without first obtaining a warrant.

The trial court applied the rationale first set forth in *Owens* to the facts of this case and concluded that, even though the officer had opened the cooler to verify the presence of marijuana, the odor of which exuded from the chest, the opening of the cooler was not a search under Article I, section 9, because "the contents of [the] cooler * * * were announcing themselves to the officer. * * * [D]efendant's privacy interests were not invaded when the officer opened the cooler." That conclusion was incorrect.

The cooler in defendant's vehicle was an opaque container that could have contained any number of items, legal or illegal, and that happened to contain marijuana among its contents. The fact that the officer could smell marijuana in the cooler cannot, by itself, defeat the privacy interest that defendant had in the cooler. This is not a case of a paper bindle that, by its size and unique construction, could not have been anything other than a packet of drugs. *See State v. McCrory*, 84 Or App 390, 734 P2d 359 (1987). It is not a case of a transparent container through which contraband *and*

*nothing else* is readily viewed. *See Owens*, 302 Or at 206; *State v. Bechtold*, 99 Or App 593, 783 P2d 1008 (1989), *rev den* 309 Or 521 (1990). Nor is it a case in which an otherwise concealing container is labeled in a way that reveals its illegal contents. *See State v. Ready*, 148 Or App 149, 939 P2d 117, *rev den* 326 Or 68 (1997) (videotapes labeled "kid porn from Larry—movies then stills" announced contents as contraband). In such cases, the containers in question not only "announce" their contents but do so in a way that announces that contraband is their *sole* content. *Owens* and its progeny require that that be the case. If they did not, then opening the container *would* constitute a search, because it would open to scrutiny contents that were not then known.[2] There is no basis, on this record, to conclude that the smell emanating from the chest announced that the chest contained marijuana and *only* marijuana.[3]

■        If the trial court's conclusion were correct, then *any time* the police have reason to believe that a container (or, for that matter, a home) holds contraband, because they can either see the contraband or smell it, they would be justified in opening the container (or entering the home) to look for the contraband, on the ground that it has "announced" its presence. The law is clearly to the contrary. The rationale in *Owens* and its progeny is confined to situations in which there is no reason to believe that opening the container will result in any greater intrusion into a person's privacy than

---

[2] The dissent claims that *State v. Herbert*, 302 Or 237, 729 P2d 547 (1986), holds to the contrary and that it controls this case. The dissent is mistaken. *Herbert* involved a principle quite different from the one at issue in *Owens*. *Owens* involved whether opening a container that the police had in their possession constituted a search. *Owens* held on its facts that it did not. *Owens*, 302 Or at 206-07. *Herbert*, in contrast, involved a situation in which opening the container *did* constitute a search, *Herbert*, 302 Or at 243, but it was justified by probable cause and exigent circumstances. *Herbert* simply has no application to this case, in which the state made no effort to establish that the search that occurred when the police opened the container was justified by exigent circumstances.

If *Herbert* stood for the proposition that the police are free to search without a warrant or an exception to the warrant requirement a container that they have in their possession, then there was no reason for the court to go to the trouble that it did in *Owens* to establish when it is *not* a search to open such a container. Of course, *Herbert* does not stand for that proposition. *Herbert* and *Owens* address very different situations. Our case involves the application of *Owens*, not *Herbert*.

[3] In fact, the cooler *did* contain things other than marijuana.

already has occurred through viewing or smelling the container. Accordingly, unless it is apparent that the container at issue holds nothing other than contraband, and that is not the case here, a warrant is required before the police lawfully can open it, unless an exception to the warrant requirement applies.[4]

Although we conclude that the trial court erred in applying *Owens* to this case, the state offers alternate grounds for affirming the court's ruling.[5] First, it argues that the automobile exception to the warrant requirement applies to the search of the cooler. Second, it contends, for the first

---

[4] Properly understood, *Owens* stands for the proposition that the police do not conduct a search by opening a container that has already announced *all* of its contents, so it is not a search to open the container to seize the contents. In other words, the police authority to open a container to seize its announced contents depends on the police having probable cause to believe that the container contains *only* the announced contents, because only then would opening the container not constitute a search, *i.e.*, only then would the police not expect to open to scrutiny anything that was not already believed to be inside. If *Owens* were not so limited, then it would eliminate the principle that searches and seizures are to be analyzed separately, *see, e.g., State v. Barnum*, 136 Or App 167, 171-74, 902 P2d 95 (1995), *rev den* 323 Or 336 (1996), because probable cause to seize any object without a warrant would carry with it the authority to open it to determine if it contains what the police have probable cause to believe that it does. If the police open the door to a vacant house, then they have conducted a search even if they see nothing inside. It is the fact that opening the door *would* subject the contents of the house to scrutiny that makes the police conduct a search. *Owens* makes sense only because it necessarily assumes that opening the transparent container will *not* subject to scrutiny something inside the container that is not already known to be there from observing the outside of the container.

The dissent disagrees. Under its view, the police could seize a large trunk that had a marijuana plant inside that was visible through a hole in the trunk and, assuming that the seizure was lawful, they could open the trunk without a warrant in order to seize the marijuana, even though they had every reason to believe that the trunk contained things other than marijuana. In its view, once the police open the trunk, their ability to look at the other things in it is simply the fortuitous product of their right under *Owens* to open it. In effect, the dissent reads *Owens* to stand for the proposition that, if the police lawfully seize a container that announces some of its contents, they can open it to seize the announced contents, even though opening it will subject to scrutiny other things in it that are not then known. That makes no sense. We can assume, for these purposes, that a person whose container has announced some of its contents may have no privacy interest in the announced contents, but that person still has a privacy interest in the remaining contents, which interest would be violated by opening the container. Article I, section 9, exists to protect that very interest against invasion by the police.

[5] "Where the ruling of the trial judge is correct on any ground, it will be upheld, even though his [or her] reasons for the ruling may have been erroneous." *Rader v. Gibbons and Reed Co.*, 261 Or 354, 365 n 3, 494 P2d 412 (1972).

time on appeal, that the search was a valid search incident to arrest. Both arguments are unavailing.

■ The automobile exception provides that, " 'if police have probable cause to believe that a person's automobile, which is mobile when stopped by police, contains contraband or crime evidence' they may conduct a warrantless search for those items." *State v. Burr*, 136 Or App 140, 145, 901 P2d 873, *rev den* 322 Or 360 (1995) (quoting *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986)). The exception exists to prevent evidence of criminal activity from being moved quickly out of the locality in which the warrant must be sought. *Burr*, 136 Or App at 149. In other words, an automobile that can quickly be moved out of the locality in which the warrant must be sought presents an exigent circumstance *per se*. Before Gunderson impounded the van, it is arguable that, because the van had been lawfully stopped and had been mobile when stopped, the automobile exception could have applied to a search of it. However, once Gunderson impounded the van, any exigency created by the van's mobility was extinguished. Gunderson was in control of the vehicle and could have kept it at the location of the stop until a warrant was issued. There was no evidence presented that the van was being towed at that time, only that Gunderson was arranging for a tow. Nor was there any evidence presented that the tow yard to which the van would be taken was not secure. The only evidence was that the van would be taken to the "city impound yard." The trial court correctly ruled that the automobile exception did not apply to the search.

■ As for the state's second alternate ground for affirmance, that the search was a valid search incident to arrest, we will not address that argument because the factual record below was not sufficiently developed. *See State v. Jacobsen*, 142 Or App 341, 345, 922 P2d 677 (1996) (court will not address issue raised for the first time on appeal if parties were not allowed to develop the factual record at trial). For a search incident to arrest to be valid under Article I, section 9, of the Oregon Constitution, the search must be closely connected to the arrest in time, space and intensity. *State v. Caraher*, 293 Or 741, 758, 653 P2d 942 (1982). The scope of the search extends to personal effects within the immediate control of the arrested person. *Owens*, 302 Or at 200. The rule

exists because an arrest creates a type of exigency that justifies a warrantless search of the arrested person. *State v. Clarke*, 110 Or App 114, 116-17, 822 P2d 138 (1991). When the exigency of the arrest dissipates, the police must seek a warrant before searching further. *Id*. The state contends that the search was a valid search incident to arrest because it "occurred contemporaneously with defendant's arrest, and it was limited to areas and articles within the arrestee's immediate control." The factual record is not sufficiently developed to support that contention. The van and its contents were no longer in defendant's immediate control when the police arrested defendant, because Gunderson already had impounded them. There also is insufficient evidence on which to find that the exigency of the arrest existed at the time of the search. It is possible that, had the issue been properly raised below, the state might have established that the search was a valid search incident to arrest, but, raised as it is for the first time on appeal, the record is not sufficient for us to address the issue.[6]

Reversed and remanded.

**EDMONDS, J.,** dissenting.

The majority holds that defendant continued to have a privacy interest in his ice chest, which was lawfully in the possession of the police, even though it was apparent to anyone in the vicinity of the chest that it contained marijuana because of its odor.[1] As a result, the majority concludes that the police were required under Article I, section 9, of the Oregon Constitution, to procure a search warrant before they could open the cooler. The majority's reasoning is contrary to the reasoning of the Supreme Court in *State v. Herbert*, 302 Or 237, 729 P2d 547 (1986), and accordingly, it errs.

When analyzing the issue in this case, it is important to keep in mind the general principles underlying Article I, section 9. Section 9 provides:

---

[6] The state also argues that Measure 40 makes the evidence found in the cooler admissible. The Supreme Court held in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), that Measure 40 is invalid, so we reject the state's argument.

[1] On appeal, defendant argues: "The mere fact that [the officer] developed probable cause to believe the chest contained marijuana did not mean the chest was not private[.]"

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Section 9 protects privacy and possessory interests in articles which the government wishes to use as evidence in criminal proceedings by requiring the government to demonstrate to a magistrate that probable cause for a search or seizure exists. Of course, not all searches or seizures are subject to the warrant requirement. For instance, when exigent circumstances exist or a search is conducted incident to an arrest, the warrant requirement is obviated. Another example of when a warrant is not required is when evidence of a crime is in plain view. Under those circumstances, no privacy interest exists, so no warrant is required under section 9.

In this case, only a purported privacy interest in the chest is at issue. The parties agree that the chest that was opened by the officer was in the lawful possession of the police. A "search" within the meaning of section 9 occurs when a person's privacy interests are invaded. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). Although the opening of the lid of a container could always be described as a "search" in the ordinary parlance of the community, section 9 requires the particularized requisite of an invasion of a privacy interest before a "search" occurs within the meaning of the constitution. For instance, the opening of a transparent container does not constitute a "search" within the meaning of section 9 because there can be no privacy interests in a container whose contents are visible. *See, e.g., Owens,* 302 Or at 206. Similarly, the opening of an opaque container that discloses its contents when its exterior is viewed is not a "search" within the meaning of section 9. Those kinds of containers announce their contents to anyone that is in their vicinity and provide no cognizable privacy interest. In addition, the uniqueness of containers, such as balloons or tinfoil bindles in particular circumstances, disclose their contents without the need to open them. *Herbert,* 302 Or at 242. In sum, a possessor of a container cannot maintain a legally cognizable privacy interest in a container whose contents are

evident from observing it, hearing it, touching it, feeling it or smelling it. *Owens*, 302 Or at 206.

The underlying reason that section 9 does not extend its protection to the contents of containers that announce the presence of some of their contents is rooted in common law as well as in common sense. At common law, officers could arrest those who committed crimes in their presence and seize evidence of their crimes. No search warrant was required to seize evidence of crimes discovered in the presence of a government agent. Section 9 acknowledges the common-law rule by requiring a search warrant for articles or contraband hidden from the senses. *See State v. Lee*, 120 Or 643, 253 P 533 (1927) (holding that no search or seizure occurred when an officer, in a place where he was lawfully entitled to be, smelled the odor of illegal mash used for the manufacture of intoxicating liquors from a neighboring barn and seized it without a warrant). Thus, "[n]ot all government intrusions, however, trigger Article I, section 9, protections." *Owens,* 302 Or at 206. Rather, a "search" for purposes of section 9 requires a legally "significant interference" with a person's privacy interests, *State v. Juarez-Godinez*, 326 Or 1, 6, 942 P2d 772 (1997), and that principle frames the inquiry in this case.

With that background, I turn to the holding in *Herbert. Herbert* is controlling because it involved the search of an opaque container that was already in the lawful possession of the government. In that case, a police officer seized an opaque paperfold from the defendant as he was being arrested on an outstanding warrant. The defendant unsuccessfully sought to hide the paperfold from the officer. The officer, based on his training and experience in the identification of controlled substances believed that the paperfold contained contraband. At the police station and in the absense of any exigent circumstance, he opened it and tested its contents. The test revealed the presence of cocaine. No search warrant was obtained before he opened it or tested it. The defendant was indicted and moved to suppress the paperfold and its contents. The trial court ruled that the officer did not have probable cause to believe that the paperfold contained contraband, and thus a reasonable belief that a crime

was being committed in his presence, which would have justified the seizure. The Supreme Court disagreed:

> "We have stated that the officer had probable cause to seize the paperfold and that the officer believed that the paperfold contained contraband. Because the officer, based upon his experience, had probable cause to believe that the paper contained contraband, *he had the right to search the paperfold for controlled substances and, therefore had the right to open that container.* Once the container was opened and the contraband discovered, he had the right to test it. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986)."

*Herbert,* 302 Or at 243 (emphasis added).

This case is legally indistinguishable from *Herbert.* The police had defendant's ice chest lawfully in their possession, and defendant does not contend otherwise. The ice chest is an opaque container, like the paperfold in *Herbert.* Its contents were not visible from outside the container. Compared to *Herbert* where probable cause to believe that the paperfold contained contraband was based on the defendant's furtive gestures, the uniqueness of the container and the officer's experiences, probable cause exists in this case because of the odor coming from the chest. Nonetheless, "probable cause" is "probable cause" regardless of its source, and even defendant does not controvert that the officer smelled the odor of marijuana coming from the chest. As in *Herbert,* a crime was occurring in the officer's presence when he smelled the marijuana. Consequently, the chest could "not support a cognizable privacy interest under Article I, section 9." *Owens,* 302 Or at 206.

The majority ignores the court's holding in *Herbert* and attempts to circumvent the Supreme Court's reasoning in *Owens.* The major point that it makes is that the chest could have and did contain other items that were not contraband. Its analysis flows from that fact. It says, "[t]he rationale in *Owens* and its progeny is confined to situations in which there is no reason to believe that opening the container will result in any greater intrusion into a person's privacy than already has occurred through viewing or smelling the container." 156 Or App at 622-23. The majority cites no authority for that proposition, and there is no precedent of

which I am aware that would support its reasoning. Certainly, its reasoning is incorrect in instances when the shape of an opaque container discloses evidence of a crime or where the writing on a container discloses what is in the container. For instance, a gun case or holster announces its contents by its very nature. The fact that it may contain other articles besides a gun, such as cleaning tools or solvent, does not make probable cause any less that it contains a gun. In *State v. Ready*, 148 Or App 149, 156, 939 P2d 117, *rev den* 326 Or 68 (1997), the label on a videotape announced its contents. The videotape could have contained more than what its title indicated, but that would not have affected the authority of the officers to seize it without a warrant.

In a comparable situation, if probable cause exists to search an automobile, the fact that the automobile could contain noncontraband items does not defeat probable cause to search the car. For example, if the officer had smelled marijuana from outside of the van in this case, he could have searched it for marijuana without obtaining a search warrant because of the van's mobility. *State v. Burr*, 136 Or App 140, 150, 901 P2d 873, *rev den* 322 Or 360 (1995). In the event that he had entered the van, sorted the contents of the van to find the source of the odor and uncovered the ice chest from which the odor was coming together with a backpack from which there was no odor of marijuana, the privacy interest in the backpack would have continued unaffected by the search for the marijuana. Even though the search of the van for the source of the odor of marijuana resulted in a greater intrusion into the privacy of the driver regarding noncontraband articles, the privacy interest in those articles remains.[2] Thus, the fact that the van contained a number of items is of no legal significance. The ramifications of the majority's reasoning are extensive. Under its rationale, many containers that could have been subject to a warrantless search because they announced that they contained contraband or evidence of a

---

[2] *See also State v. Jacobsen*, 142 Or App 341, 922 P2d 677 (1996) (holding that when an owner of an automobile consents to the general sweep of his vehicle, he nonetheless retains a privacy interest in the contents of a zipped duffel bag inside the vehicle); *State v. Binner*, 131 Or App 677, 886 P2d 1056 (1994) (holding that, although the defendant agreed to provide a blood sample for alcohol content, his refusal to be tested for drug content preserved a privacy interest in the blood sample as to drug content).

crime will now require a warrant to be searched merely because they are large enough to contain other items. The established law imposes no such qualification based on the size of the container.

Second, the majority's reasoning is oblivious to the understanding that the warrant requirement in section 9 is aimed at testing probable cause. When contents of a container are visible and they constitute contraband or evidence of a crime, probable cause is a foregone conclusion. An odor coming from a container supplies the same degree of probable cause, which is why the court in *Owens* equates transparent containers with opaque containers that give off an odor. As the court observed in *State v. McDaniel*, 115 Or 187, 238, 237 P 373 (1925), "Sense of smell is often more unerring than that of sight. Lipton's tea might look ever so much like Scotch whiskey and fool many people dependent solely upon sight, but few would be misled through the sense of smell."[3] In this case, the odor of marijuana coming from the chest was uncontroverted evidence of the commission of a crime in the presence of the officer standing by the container. The fact that there were other items in the container could not have made probable cause any less, nor does that fact diminish probable cause based on the odor merely because the chest was opaque rather than transparent. The privacy interest in preventing the lid of the chest from being opened was lost because the chest announced through its odor that it contained contraband. The officer, having probable cause to open the lid, was in a place where he had a right to be, and, under section 9, he was entitled to observe all that was in plain view, once he opened the lid. Thus, the fact that there are other items in the trunk does not detract from the legality of his observations of a crime occurring in his presence.[4]

---

[3] In *State v. Smith*, 327 Or 366, 936 P2d 642 (1998), the Supreme Court held that there is no privacy interest in an odor in public airspace.

[4] That is not to say that if the officer observed other closed containers within the container he opened, he could also open them without a warrant. Unless those containers announced their contents in a manner that made probable cause to believe that a crime was being committed in the officer's presence a foregone conclusion, section 9 would require the officer to procure a search warrant. In the event that cognizable privacy interests exist in the other contents in the chest, they continue to have protection under section 9, and defendant needed only assert that argument in a court of law to prevent the contents from being used against him in a criminal proceeding.

The majority worries that if the officer in this case was legally entitled to open the lid of the chest without procuring a warrant, then it follows that the police walking by on the street would be justified in entering a person's home to look for contraband on the ground that it had "announced its presence." "Not to worry!" *Owens* makes it clear that the contents of containers, depending on their circumstances, have varying degrees of protection under section 9. 302 Or at 206. The *Owens* rationale is confined to those situations in which the container is lawfully in the possession of the government and then, only to certain kinds of containers.[5] Types of containers to which the *Owens* reasoning applies are containers, such as paperfolds, balloons or bindles, which are so unique that under particular circumstances, they announce their contents. Other kinds of containers such as transparent vials, paper bags or bales of marijuana may announce their contents to the human senses. There is no precedent that suggests that a house is a "container" within the meaning of Oregon law. Finally, the touchstone in the *Owens* analysis begins with whether the container is in the lawful possession of the police. The majority's hypothetical meets neither of those requirements.

Also, the majority's reasoning is at odds with the Fourth Amendment. In *Arkansas v. Sanders*, 442 US 753, 764 n 13, 99 S Ct 2586, 61 L Ed 2d 235 (1979), the Court said that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment." The Court recognized that there can be no reasonable expectation of privacy in the contents of some containers (for example a kit of burglar tools or a gun case) because by their very nature, their contents are evident from their outward appearance. *Id.*[6] *See also United States v. Norman*, 710 F2d 295, 298 (4th Cir), *cert den* 464 US 820 (1983)

---

[5] As Judge De Muniz pointed out in his dissent in *State v. Dickerson*, 135 Or App 192, 197, 898 P2d 193 (1995), the word "container" is a word of art in Oregon search and seizure law. It describes things that are receptacles with a cover for purposes of storage or transportation such as briefcases, a fishing tackle box, a black plastic box, a cigarette case, a metal Sucrets box, a purse and a backpack.

[6] In *California v. Acevedo*, 500 US 565, 575-76, 111 S Ct 39, 112 L Ed 2d 619 (1991), the Court rejected the specific holding of *Sanders*, that although officers had probable cause to believe that a suitcase in an automobile contained contraband, they had to obtain a search warrant because of the heightened privacy expectation in personal luggage. The Court concluded,

(warrantless search of bales on ship was held lawful because under the plain view doctrine, the smell of marijuana revealed itself to the senses). In fact, this court held in *State v. Nichol*, 55 Or App 162, 166, 637 P2d 625, *rev den* 292 Or 581 (1981), that the smell emanating from a lawfully seized paper bag revealed its contents so that the opening of the bag did not require a warrant under the Fourth Amendment. Under the majority's rationale, an ice chest that emits the odor of marijuana requires a search warrant to open it while a paper bag does not (at least under the Fourth Amendment).[7] While we are free to provide greater protection under section 9 than is provided by the federal constitution, the majority advances no compelling reason why there should be dual standards under the circumstances of this case. After all, not even defendant seriously contests that the officer had probable cause to believe the chest contained marijuana, and probable cause is what the warrant requirement in section 9 is all about. In light of the purpose of section 9, the majority's requirement that the officer should have obtained a warrant when a crime was being committed in his presence elevates form over substance.

For all of these reasons, I dissent.

---

"it is better to adopt one clear-cut rule to govern automobile searches and eliminate the warrant requirement for closed containers set forth in *Sanders*.

"\* \* \* \* \*

"\* \* \* The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."

*Id.* at 579, 580.

[7] A distinction without a difference except for the majority's interpretation of section 9. We should interpret the Oregon Constitution in a manner that is consistent with the historical understanding of its framers. The Fourth Amendment states:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures 'shall not be violated, and no Warrants shall issue, but upon probable cause' supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Although section 9 protects "privacy interests" while the Fourth Amendment focuses on "expectations of privacy," it is difficult to reasonably conceive how the framers of the Oregon Constitution would have understood section 9 to have compelled a different result than the Fourth Amendment in regard to an ice chest that reeked of marijuana.

Deits, C. J., and Warren, J., and Riggs, J., pro tempore, join in this dissent.