Argued and submitted July 31, 2001, reversed and remanded May 29, 2002

## STATE OF OREGON,
*Appellant,*

*v.*

## CHARLES WAYNE NELSON, JR.,
*Respondent.*

### CR9902285; A110967

47 P3d 521

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Peter Gartlan, Chief Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

The state appeals a pretrial order suppressing evidence discovered during an inventory of defendant's truck. ORS 138.060(3). We reverse and remand.

The facts are uncontested. Officer Behan of the Clackamas County Sheriff's Office stopped defendant for a number of traffic infractions. Defendant did not have a driver's license. The officer ran a records check that revealed that defendant's license was suspended and then took defendant into custody for, among other charges, failure to carry or present a license. ORS 807.570.

Because defendant was driving without insurance and without a license, the officer impounded defendant's truck and arranged to have it towed. While waiting for the tow truck to arrive, the officer conducted an inventory of defendant's truck. The officer testified that, when he began the inventory, he was not looking for evidence of a crime. Rather, he was acting pursuant to the county's inventory policy, which provided for impounding officers to "[l]ook inside the vehicle for valuables, including closed containers," such as "daily planners, purses, fanny packs, anything large enough really to hold valuables * * * such as money or jewelry * * * that were left in the vehicle. The county would be [liable] to reimburse the owner of the vehicle if they were taken at some point before the person got their vehicle back."

During the course of the inventory, the officer pushed forward the front seat, which he described as "bench-style." Behind the driver's seat, he saw a "brown, fake leather planner, blank, sitting partially open." Through that opening, he was able to see the edge of a large roll of cash. The officer picked up the planner, removed the cash, and set both aside while he completed the inventory.

The officer next looked behind the passenger seat, where he found a "red and black nylon backpack, which was zipper-closed." He described what happened next:

"I picked up the backpack. I held it at arm's length, pulling it out of the vehicle. I could smell a very strong odor in the vehicle coming from the pack. I held it to my nose and made

"the determination the strong odor was coming from the pack. I squeezed the pack and could feel individual packs of what felt and smelled to me like marijuana, based on my training and experience. They were rolled in small baggies."

The officer gathered what he had found in defendant's truck and walked back to his patrol car, where defendant was waiting. When asked about the money and the backpack, defendant initially stated that neither the truck nor its contents belonged to him. At that point, the officer asked if defendant would mind if he opened the backpack. Defendant then effectively said he would mind; the officer replied that he smelled marijuana in the backpack. Defendant acknowledged that there was, in fact, approximately seven ounces of marijuana in the backpack, but he refused to give the officer permission to open it. The officer nevertheless opened the backpack and found "many individual * * * bags of marijuana," which ultimately weighed in at over eight ounces.

The state charged defendant with one count each of manufacture of a controlled substance, ORS 475.992(1)(a), delivery of a controlled substance, ORS 475.992(1)(a), and possession of a controlled substance, ORS 475.992(4)(a). Before trial, defendant moved to suppress evidence of the cash found in the day planner, the backpack and its contents, and the state crime lab report identifying those contents as marijuana. In the written memorandum in support of the motion, defendant framed the issue for the trial court's resolution. In the opening lines of the memorandum, defendant acknowledged that the county "does have an impound, towing and inventory ordinance" and that the officer had authority pursuant to that ordinance "to inventory the contents of the vehicle the defendant was driving after [the officer] had impounded it." But relying on *State v. Kruchek*, 156 Or App 617, 969 P2d 386 (1998), *aff'd by an equally divided court* 331 Or 664, 20 P3d 180 (2001), and *State v. Guynn*, 162 Or App 594, 986 P2d 1190 (1999), defendant asserted that the officer needed a warrant to open the backpack. In particular, he relied on those cases for the proposition that, "if an officer develops probable cause during an inventory to believe that a closed container holds evidence of a crime, the officer cannot

seize the container without first obtaining a warrant, or establishing that an exception to the warrant requirement permits warrantless seizure." *Guynn*, 162 Or App at 597-98 (citing *Kruchek*, 156 Or App at 621). Thus, according to defendant, because there was no warrant in this case, the evidence was not admissible unless the state established that the backpack was opened pursuant to an exception to the warrant requirement. Defendant argued that no such exception applied.

At the outset of the suppression hearing, the prosecutor advised the trial court that the issue was going to be whether the officer had authority to search the contents of the backpack. He argued "that this was a valid inventory" pursuant to which the officer could examine the contents of the backpack for valuables. He also identified two additional theories that the state expected to advance for the lawfulness of the search: (1) that defendant denied ownership of the backpack at the time, and (2) that it could be conducted pursuant to the automobile exception to the warrant requirement.

After the evidentiary phase of the hearing, the prosecutor began his argument by telling the trial court that he was relying on the "same arguments" he identified at the outset of the hearings. He again asserted first that the search was pursuant to a valid inventory. The trial court asked whether the prosecutor was claiming that the officer could open the backpack as a result of the inventory. The prosecutor responded, "I think he could, Judge, based on the inventory" and pointed out that the inventory policy expressly authorized opening closed containers to look for valuables. The prosecutor continued his argument by relying on several additional grounds to justify the search, namely, that defendant disclaimed ownership of the backpack, that the backpack was lawfully examined as a search incident to arrest, and that the circumstances fit within the automobile exception.

The defense took issue with all of the grounds relied on by the prosecutor. With respect to the prosecutor's argument that the inventory policy authorized the examination of the backpack, defense counsel agreed with the prosecutor

that "[c]learly the basis for this search was an inventory." Defense counsel further acknowledged that "the county ordinance includes a provision about searching a closed container." But defense counsel asserted that "you can't make an otherwise invalid search valid because there is an ordinance that allows it." Defense counsel argued that *Kruchek* was "precisely on point" and "simply controlling" and that, under that case, the officer could not open the backpack in the course of the inventory without a warrant because none of the exceptions to the warrant requirement applied.

The trial court agreed with defendant's position. In a written order granting the motion to suppress, the trial court concluded that the officer conducted "an inventory search of the contents of [the] vehicle" and that the inventory, including the search of the contents of the day planner, "was proper and constitutionally valid." The trial court further concluded, however, that "there is no basis that this court can find from the facts of this case that would justify opening the bag without a warrant first being obtained." The trial court therefore suppressed the backpack, its contents, and the lab report identifying those contents as marijuana.

On appeal, the state renews its argument that the examination of the contents of the backpack was lawful under the county's inventory policy. Specifically, the state argues that, even though the officer acquired probable cause to believe that the backpack contained marijuana, he was entitled to open it pursuant to the inventory policy because, according to his testimony, the officer would have inventoried the contents of the backpack regardless of whether he had first smelled the marijuana.[1]

Defendant does not respond to the merits of the state's argument in that regard or renew his argument that, regardless of any authority conferred by the inventory policy,

---

[1] The state also argues in the alternative that, once the officer smelled the marijuana, he was entitled to open the backpack because the backpack announced its contents in such a way as to extinguish any constitutionally protected privacy interest. The state's alternative argument would require us to overrule our contrary holding in *Kruchek,* which we decline to do without further discussion. Beyond that argument, the state abandons its reliance on the other grounds asserted below for permitting the officer to examine the contents of the backpack without a warrant (*i.e.,* the automobile exception and abandonment).

the officer was required to obtain a search warrant to open the backpack. Instead, defendant raises several reasons why the state cannot rely on the inventory policy on appeal. First, defendant asserts that the state abandoned its inventory argument in the trial court and that it therefore "is not before this court." Second, defendant argues that the terms of the inventory policy were not introduced into evidence and, therefore, this court cannot determine on appeal whether the inventory policy is valid or whether its terms authorized an examination of the backpack's contents. Third, and last, defendant argues that the terms of the policy, to the extent the record establishes what they are, do not satisfy constitutional standards for a valid inventory policy. Because defendant's arguments raise threshold issues that, if correct, would preclude consideration of the merits of the state's position, we begin with those points.

■   Contrary to defendant's position, the state adequately preserved and did not later waive or abandon its position that the examination of the backpack was lawful pursuant to the county's inventory policy. As we described above, the prosecutor, in both opening and closing arguments on the suppression motion, expressly asserted that the state's position was that the officer lawfully examined the contents of the backpack pursuant to the county's valid inventory policy. Indeed, at one point the trial court specifically asked if the prosecutor was asserting that the inventory policy authorized the officer to open the backpack; the prosecutor answered affirmatively. To be sure, the prosecutor urged other theories for why a warrant was not required, and much of the colloquy between the trial court and counsel for both sides focused on those theories. But that focus was attributable in significant part to defendant's own legal argument, which was that, under *Kruchek* and *Guynn*, despite the officer's authority under the inventory policy, the police had to obtain a warrant because they acquired probable cause to believe criminal evidence was in the backpack before they had in fact opened it. That argument naturally directed much of the discussion to the prosecutor's assertion that the automobile exception and other criminal investigatory exceptions to the warrant requirement applied. At no point, however, did the state withdraw or otherwise abandon its reliance on

the officer's authority pursuant to the inventory policy. Thus, the state's argument in that regard is properly before us.

■■ Defendant's second argument offers an alternative ground for affirmance. Specifically, he asserts that, because the actual terms of the inventory policy were not made a part of the record below, the question of whether that policy permitted the officer to open the backpack is not reviewable by this court. We disagree. Generally, we will affirm a trial court's ruling "even if the trial court's legal reasoning for the ruling was erroneous, if another legally correct reason and, to the extent necessary, the record developed in the trial court support the ruling." *State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000). To do so, we must first be satisfied that, among other things, the factual record was developed in a way that will support the alternative legal theory. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). In other words, if the parties would have developed a different factual record below in response to arguments made for the first time on appeal, we will not consider those arguments.

■ Here, defendant argues that we should affirm the trial court's order because the state never entered the terms of the inventory policy into evidence. Defendant's premise that an ordinance establishing the inventory policy must or should be admitted as "evidence" is a questionable one.[2] But even accepting that questionable premise, the argument is unavailing. As an initial matter, defendant stipulated that the Clackamas County ordinance was properly enacted and gave the officer the authority to inventory the contents of defendant's vehicle. Defendant did not argue at any point that the terms of the policy forbade the officer from opening the backpack. To the contrary, from the opening lines of his written memorandum through his closing argument at the suppression hearing, defendant conceded the existence of the county's inventory policy and the officer's authority pursuant to it to inventory the contents of the vehicle. The officer

---

[2] Unlike some inventory policies, the inventory policy at issue in the present case is an ordinance enacted by Clackamas County. OEC 202(7) specifically permits courts to take judicial notice of ordinances. We do not, by addressing defendant's argument, mean to endorse defendant's implicit proposition that parties are required to enter into evidence things that are properly subject to judicial notice.

expressly testified that the policy provided for opening closed containers that could contain valuables. In cross-examining the officer, the defendant sought to, and did, clarify that the officer examined the contents of the backpack *based on the county's inventory policy* rather than pursuant to a criminal investigation. All of that was consistent with defendant's theory for the suppression motion, which was that, *irrespective* of the inventory policy, the officer had to obtain a warrant when, in the course of the inventory and before actually opening the backpack, he acquired probable cause to believe that it contained evidence of a crime. In light of the way defendant's motion to suppress and arguments to the trial court framed the issues, there was no controversy regarding the terms or scope of the inventory policy itself. Had defendant raised the issue before the trial court, the state could have introduced a copy of the policy into evidence. Accordingly, we will not rely on the absence of that policy as an alternative ground for affirmance. *Outdoor Media Dimensions Inc.*, 331 Or at 659.[3]

**5.** Defendant's third argument suffers from the same problem as his second. On appeal for the first time, he contends that, to the extent the record shows that the officer could open closed containers pursuant to the policy, the evidence of the policy fails to satisfy constitutional standards for a valid inventory policy. More specifically, defendant asserts that the policy directing the officer to open closed containers that could contain valuables was too general in nature and did not adequately channel and confine an impounding officer's discretion in various ways. *See generally State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984) (to be constitutional, inventory policy must be "designed and systematically administered so that [it] involves no exercise of discretion by the [officer conducting] the inventory"). Defendant advanced no such contention below, either in his written motion to suppress or otherwise. Had he done so, the record as to the explicit terms of the policy and the degree of discretion conferred on an impounding officer undoubtedly would have

---

[3] *See also State v. Johnson*, 153 Or App 535, 543-44, 958 P2d 887, *rev den* 327 Or 554 (1998) (the fact that certain aspects of an inventory are prerequisites to its validity does not alter the need to raise and preserve challenges based on arguments that a particular inventory policy does not comply with those prerequisites).

been more extensively developed. We therefore decline to reach defendant's third alternative argument. *Outdoor Media Dimensions Inc.*, 331 Or at 659.

We therefore turn to the merits of the state's contention on appeal. The state argues, in effect, that the officer's authority to inventory the contents of the backpack pursuant to the inventory policy provides independent justification for opening it and examining what it contained. The record establishes that the officer opened and examined the backpack pursuant to the inventory policy and that, in all events, he inevitably would have done so. Thus, according to the state, the examination of the backpack and the discovery of the marijuana inside was lawful and no warrant was required.

■    We agree with the legal proposition on which the state relies. As the Supreme Court observed in *Atkinson*:

> "If initial impoundment is valid under the [standards applicable to administrative inventories], and if an inventory is conducted pursuant to and consistent with a properly authorized administrative program, that is, the inventory would be conducted in any event, the fact that the officer also looks for evidence of criminal activity would not invalidate the inventory. *See State v. Tourtillott*, 289 Or 845, 868, 618 P2d 423 (1980)."

298 Or at 11 n 7. That observation is consistent with the familiar approach to search and seizure issues. A search or seizure of an item need not be lawful on all theories to be sustained; it is enough if it is lawful on one. The proposition is so fundamental that it is rarely articulated in explicit terms. But the principle is firmly embedded and routinely reflected in our resolution of challenges to police conduct that may be resolved on more than one ground. *See, e.g., State v. Rhodes*, 315 Or 191, 198-200, 843 P2d 927 (1992) (court would not reach question of officer's authority to stop the defendant under community caretaking doctrine where statute provided authority for officer to stop defendant to investigate traffic crime); *State v. Cromwell*, 109 Or App 654, 656-67, 820 P2d 888 (1991) (where search was authorized under automobile exception, court did not need to consider other arguable bases for officer's authority to search without a warrant).

In arguing to the contrary before the trial court, defendant relied on a single sentence in *Guynn*, which in turn was drawn from *Kruchek*. Specifically, defendant quoted *Guynn* for the proposition that, "if an officer develops probable cause during an inventory to believe that a closed container holds evidence of a crime, the officer cannot seize the container without first obtaining a warrant, or establishing that an exception to the warrant requirement permits warrantless seizure." 162 Or App at 597-98 (citing *Kruchek*, 156 Or App at 621). Defendant understood that portion of our decision to hold that, whenever an officer acquires probable cause to believe a closed container contains criminal evidence, the officer must obtain a warrant to open the container, unless one of the warrant exceptions applicable to a criminal investigation applies. In other words, irrespective of the officer's authority pursuant to the inventory policy, the general requirement of a warrant applied.[4]

Our holding in *Guynn* and *Kruchek*, however, was not so novel. The inventory policy in both of those cases authorized police to impound closed containers but did not authorize the opening of those containers. As we explicitly noted in *Guynn*, the city's inventory policy in that case expressly provided that "closed containers found within a vehicle * * * during an inventory search are not to be opened." 162 Or App at 596. The same was true in *Kruchek*.[5] In neither case did the state assert that the officer's intrusion into a closed container, as opposed to merely the impoundment of the container, was authorized under the government's inventory policy.

---

[4] As earlier noted, defendant abandons this argument on appeal and does not respond to the merits of the state's argument. We nevertheless discuss defendant's argument because it formed the basis for the trial court's ruling.

[5] In *Kruchek*, as the briefs on appeal made clear, the officer testified that the inventory policy governing his conduct did not allow him to open closed containers and the state conceded that lack of authority in its argument to the trial court. Our opinion did not explicitly note that the inventory policy precluded opening the container, although the point was implicit in our description of the state's argument, which was limited to relying on the inventory policy as a basis for seizing the container itself, not searching its contents. *See generally Kruchek*, 156 Or App at 620-21.

■ This case is distinguishable in that crucial respect. In contrast to *Guynn* and *Kruchek*, the record in this case provides evidence that—and the parties appear to have proceeded on the assumption that—the inventory policy authorized the officer to open closed containers and that the officer opened and examined the backpack's contents pursuant to that authorization and inevitably would have done so. While the state therefore relied on the inventory policy as an independent source of the officer's authority to act, defendant took the position that such authority did not matter because the officer's acquisition of probable cause to believe that the backpack contained criminal evidence required the officer to comply with the warrant requirements applicable to a criminal investigation. Defendant's legal theory was wrong, and suppression pursuant to that legal theory was error.

■ That conclusion, however, is not enough to resolve the question of whether the challenged evidence should or should not be suppressed. In its written order, the trial court expressly concluded that the impoundment of defendant's vehicle and the inventory of its contents "was proper and constitutionally valid." It further concluded, however, that the "warrantless search" of the closed backpack was "not a proper inventory search" and was constitutionally invalid, explaining that "no exceptions to the search warrant requirement * * * are applicable under the facts of this case." In context, the trial court's conclusion regarding the inventory of the backpack was limited to the theory that it was invalid *because* the warrant requirement for criminal investigatory searches applies. The trial court made no finding or conclusion pertaining to the officer's authority to open the backpack under the inventory policy and the validity of the policy insofar as that authority is concerned. That omission is understandable: such a conclusion was unnecessary given the theory on which defendant proceeded and with which the trial court agreed.

Such a conclusion, however, is a necessary predicate to the analysis. If the inventory policy authorized the officer's opening of the backpack and did so validly, then the officer's examination was lawful; no warrant or criminal investigatory exception to the warrant requirement applied. If, on the

other hand, the inventory policy did not authorize the opening of the backpack or it did not do so validly, then the evidence should be suppressed because, under our decision in *Kruchek*, either a warrant or one of the exceptions that the state has now abandoned is required. Thus, there are alternative bases for granting or denying the motion to suppress that will turn on the trial court's findings and conclusions as to the scope and validity of the inventory policy insofar as it authorizes the opening of a closed container. A remand for further proceedings on the motion to suppress therefore is required. *See State v. Wise*, 305 Or 78, 82 n 2, 749 P2d 1179 (1988) ("the Court of Appeals should not hesitate to send cases back to the trial courts" for necessary findings on motions to suppress); *State v. Hacker*, 51 Or App 743, 627 P2d 11 (1981) (where alternative bases for granting or denying a motion to suppress exist and turn on factfinding by the trial court, case should be remanded); *State v. Johnson / Imel*, 16 Or App 560, 519 P2d 1053 (1974) (similar holding).[6]

Reversed and remanded.

---

[6] Moreover, although defendant's challenges to the terms of the policy and its constitutional validity do not provide a proper alternative basis for affirmance on appeal, nothing forecloses defendant from raising them on remand. *See State v. Wyman*, 59 Or App 542, 546, 651 P2d 195 (1982) (where defendant raised issue after filing motion to suppress that was not resolved by the trial court, the issue remained for resolution on remand); *State v. Parras*, 52 Or App 1071, 1075-76, 630 P2d 410, *rev den* 291 Or 662 (1981) (where state raised theory of admissibility on appeal that it had no opportunity to present because trial court initially ruled in its favor, issue properly could be presented on remand).