Argued and submitted February 28; resubmitted In Banc May 3, reversed and remanded for new trial June 21, 1995

# STATE OF OREGON,
*Respondent,*

*v.*

# JERRY B. DICKERSON,
*Appellant.*

## (93-20378; CA A82242)

898 P2d 193

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Diane S. Lefkow, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

LEESON, J.

De Muniz, J., dissenting.

## LEESON, J.

Defendant appeals from his convictions for second degree criminal mischief. ORS 164.354. We address only the assignment of error that challenges the trial court's denial of his motion to suppress evidence obtained when police conducted a warrantless search after he was arrested for a probation violation related to an earlier conviction. We review for errors of law, ORS 138.220, and reverse.

On October 21, 1991, Eugene police officer Goldsmith arrested defendant at a downtown mall. Goldsmith testified that defendant had been agitated and hostile when the two had had contact at the mall earlier in the day. Goldsmith later learned that an arrest warrant had been issued for defendant. As he was returning to the area where he had encountered defendant earlier, Goldsmith heard a report on his police radio that the tires of several cars in the area had been slashed. Goldsmith found defendant at a telephone booth on the mall and, pursuant to the warrant, arrested and handcuffed him. During a patdown search, a recruit officer working with Goldsmith removed a pocketknife from defendant. Goldsmith described it as a short folding knife, with a blade about two and three-quarters inches to three inches long. One of the officers opened the pocketknife and noticed a black smudge on the blade. Goldsmith then seized the knife as evidence of the tire slashings and sent it to the state crime laboratory where tests indicated that it had been used to slash tires in the mall area.

Defendant was charged with five counts of second degree criminal mischief for recklessly damaging automobile tires. The trial court denied defendant's motion to suppress the warrantless search of the pocketknife. It ruled that the officer was permitted to open and examine the knife out of a concern for officer safety. Following a stipulated facts trial, the court found defendant guilty of three counts of second degree criminal mischief.

Defendant contends that it was not necessary to examine the blade of the pocketknife to determine that it was a weapon and that the officers' safety did not justify opening it, because after the recruit seized the pocketknife it was no longer a threat to them. The state maintains that the officers

lawfully seized and opened the pocketknife as a safety precaution.

A patdown or limited search for weapons to protect an officer or to prevent escape is justified whenever a person is taken into custody. *State v. Hoskinson*, 320 Or 83, 87, 879 P2d 180 (1994). Although here the officers were justified in removing the pocketknife for their own protection or to prevent defendant from escaping, once the knife was in their possession, they no longer had reason to believe that it posed a threat to them. *State v. Jones*, 103 Or App 316, 797 P2d 385 (1990).[1] The warrantless search of defendant's pocketknife was not justified on the grounds of officer safety.

The state argues that we should affirm the trial court nonetheless, "because there is no privacy interest in a container [the pocketknife] which so clearly announces its contents" and, therefore, the officers did not need a warrant to open the pocketknife and examine the blade.[2] Defendant contends that he had a privacy interest in the pocketknife and that opening it was a search that was subject to the warrant requirement of Article I, section 9, of the Oregon Constitution.[3]

A person does not have a privacy interest in the contents of a transparent container such as a clear plastic baggie or a pill bottle or a container that otherwise announces its contents. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). However, a person does have a protected privacy interest in the contents of an opaque container that does not announce its contents. *Id.* at 202; *State v. Gotham*, 109 Or App 646, 649, 820 P2d 884 (1991), *rev den* 312 Or 677 (1992). In this case, to the extent that it "announced" anything,

[1] *Jones* is directly on point, but the state does not cite it as adverse authority.

[2] We assume, but do not decide, that a pocketknife is a container, because that is the theory the state espoused before the trial court and reiterates on appeal. Thus, the dissent, in asserting that the pocketknife is not a container, is advancing an argument that the state has never made.

[3] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

defendant's closed pocketknife announced only that it contained a blade. Nothing in the pocketknife's appearance gave the officers reason to believe that the blade contained residue from tire slashings. Because opening the knife revealed evidence that was not otherwise exposed to public view, it was a search that required probable cause. *State v. Rhodes*, 315 Or 191, 197, 843 P2d 927 (1992). *See State v. Portrey*, 134 Or App 460, 896 P2d 7 (1995) (police officers' exposing of "concealed personal effects" — the soles of the defendant's boots left on the front porch — implicates privacy interests).

■ The state contends that the officers had probable cause to open and examine defendant's pocketknife. It maintains that, just before arresting defendant, Goldsmith heard a radio report that the tires on several cars in the immediate area had been slashed, that he knew defendant was intoxicated and belligerent and that defendant had been in the area where the tire slashings had occurred. The state contends that, under these circumstances, Goldsmith had probable cause to believe that defendant had been involved in the tire slashings.

We find the state's argument on this point no more persuasive than did the trial court. The court concluded that

"[t]he officer did not open up the knife, as I understand it, on the basis of probable cause to believe that the defendant had participated in some tire slashing."

Evidence in the record supports that conclusion. Goldsmith testified at the suppression hearing that when he arrested defendant, he did not have probable cause to believe that defendant was involved in the tire slashings and that he seized the pocketknife as evidence of the tire slashings only *after* he saw the smudge marks on the blade.

The trial court erred in denying defendant's motion to suppress the evidence of the pocketknife on the grounds of officer safety. We are unable to affirm on the grounds proffered by the state.

Reversed and remanded for new trial.

**De MUNIZ, J.,** dissenting.

I disagree with the majority's analysis and conclusion that unfolding the pocketknife was a search that

required probable cause and a warrant. Accordingly, I respectfully dissent.

The majority assumes that two warrantless searches occurred. The first search occurred when the police arrested defendant and conducted a pat-down or limited search for weapons. 135 Or App at 195. I agree with the majority that that search and the seizure of the pocketknife were justified by the need to protect the officers' safety. I part company with the majority when it asserts that another search occurred when the officer unfolded the pocketknife and saw tire residue on it. 135 Or App at 195.

Unlike the majority, I do not agree that a simple pocketknife should be characterized as a "container." A container is generally a receptacle with a cover in which things are placed for storage or transportation.[1] Oregon appellate cases are consistent with that definition of a container. *See State v. Groda*, 285 Or 321, 591 P2d 1354 (1979) (briefcase); *State v. Keller*, 265 Or 622, 510 P2d 568 (1973) (fishing tackle box); *State v. Meyer*, 120 Or App 319, 852 P2d 879 (1993) (black plastic box); *State v. Morton*, 110 Or App 219, 822 P2d 148 (1991) (cigarette case); *State v. Gotham*, 109 Or App 646, 820 P2d 884 (1991), *rev den* 312 or 677 (1992) (opaque, round, plastic container); *State v. Jones*, 103 Or App 316, 797 P2d 385 (1990) (metal Sucrets box); *State v. Schellhorn*, 95 Or App 297, 769 P2d 221 (1989) (purse); *State v. Rounds*, 73 Or App 148, 698 P2d 71, *rev den* 299 Or 663 (1985) (backpack). A pocketknife is not a container, rather it is "a knife with a blade folding into the handle to fit it for being carried in the pocket[.]" *Webster's Third New Int'l Dictionary* 1747 (unabridged ed 1993).

To determine whether particular police conduct is a search, "we must look to the nature of the act asserted to be a search." *State v. Campbell*, 306 Or 157, 170, 759 P2d 1040 (1988). Once the pocketknife was lawfully seized from defendant, manipulation and visual observation of the blade of the

---

[4] *Webster's* defines a container as "a receptacle * * * or a formed or flexible covering used for the packing or shipment of articles, goods, or commodities[.]" *Webster's Third New Int'l Dictionary* 491 (unabridged ed 1993).

knife is simply not the kind of police conduct that *significantly* impairs an individual's interest in freedom from scrutiny. *See State v. Wacker*, 317 Or 419, 425, 856 P2d 1029 (1993). I would hold that a simple pocketknife is not a container and that unfolding the blade of the knife and looking at it is not a search under Article I, section 9, of the Oregon Constitution.

However, even assuming, as the majority does, that a pocketknife is a container, I disagree that it is a container that merits protection under Article I, section 9. In *State v. Owens*, 302 Or 196, 729 P2d 524 (1986), the court distinguished between privacy interests in different types of containers. Containers that announce their contents because, for example, they are transparent do not support a cognizable privacy interest under Article I, section 9. 302 Or at 206. The contents of such containers are essentially in "plain view," and thus no warrant is necessary to open them and seize the contents. *Id*. In contrast, as the majority notes, a person does have a privacy interest in opaque containers that do not "announce their contents." *Gotham*, 109 Or App at 649.

Defendant makes no argument why he had a privacy interest in the pocketknife. He only asserts in a footnote that "it is clear that the opening of [his] pocketknife was a search" that was unreasonable under the circumstances. The majority concludes that the "closed pocketknife announced only that it contained a blade[,]" and "[b]ecause opening the knife revealed evidence that was not otherwise exposed to public view, it was a search that required probable cause." 135 Or App at 196.

Unlike the majority, I find no cognizable privacy interest in the blade of a simple pocketknife. The distinctive configuration of a closed pocketknife indicates that it contains a blade. That is, the handle announces that it contains a blade. The edges of a pocketknife are integral parts of the blade. Insofar as the handle announced that it contained a blade, it also announced that the blade had edges, a sharp one and a dull one. Consequently, defendant had no privacy interest in either the blade or its edges. *See Owens*, 302 Or at 206. When the officers unfolded the blade of defendant's pocketknife, they did not invade any constitutionally protected privacy interest, and thus, there was no search. *Cf.*

*State v. Rhodes*, 315 Or 191, 196, 843 P2d 927 (1992) (search occurs when a governmental officer intrudes into the protected privacy interest of an individual).

I would affirm the court's denial of defendant's motion to suppress.

Richardson, C. J., and Deits and Edmonds, JJ., join in this dissent.