Argued and submitted October 7, 1997, affirmed April 29, 1998

# STATE OF OREGON,
## *Appellant,*

*v.*

# KRISTEN MICHAEL HANEY,
## *Respondent.*

## (96D109685; CA A96850)

958 P2d 192

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Dennis V. Messoline argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Deits,* Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, Chief Judge, *vice* Rossman, Senior Judge.

## DE MUNIZ, P. J.

The state appeals from the trial court's pretrial order suppressing a gun seized from defendant's bookbag during the course of a lawful traffic stop. We affirm.

At 12:30 a.m. on September 27, 1996, Salem Police Officer Wickman was stopped at an intersection waiting for the light to change when he saw defendant commit a traffic infraction. Wickman stopped defendant and requested his driver's license. Defendant gave Wickman his license and admitted that he did not have insurance. Wickman returned to his vehicle and "ran" defendant's driver's license; it came back as valid with no "wants." Wickman requested a "no insurance" tow through dispatch and informed defendant that his car would have to be towed. Wickman then "ran" the license plates that were on defendant's car and learned that they had been issued for a different vehicle. Wickman then requested the presence of a back-up officer.

Officer Byers arrived to assist Wickman. Wickman told Byers that defendant did not have insurance and that the license plates on the vehicle were not issued to the vehicle's identification number (VIN) but that neither defendant's car nor the license plates on the car had been reported stolen. The officers asked defendant to step out of the car. When they questioned defendant about the mismatched plates, defendant responded that he had purchased the car that way. The officers testified that they were satisfied with defendant's explanation. Wickman told defendant that if there was any personal property that he would like to remove from the car, he should let the officers know or it would be towed away with the car.

Byers then looked through the window of the car with the aid of his flashlight and saw a helmet, bookbag,[1] and other items on the front seat. He asked defendant if the "stuff" in the car was his. Defendant said that it was. Wickman asked defendant if they could search the bookbag lying

---

[1] The trial judge and the parties variously refer to the item as a bookbag, a backpack, or a bag. We refer to it as a bookbag.

on the front seat, and defendant said no, because he had "personal stuff" in it. Wickman returned to his car and began the paperwork for the tow truck driver while Byers remained with defendant. Byers then asked defendant whether he wanted the "stuff" out of the car. Defendant said that he wanted the bookbag. In retrieving the bookbag from the car, Byers lifted it, and its heaviness concerned him. As he lifted the bookbag out of the car, he felt the bookbag and through the material detected what he believed was a handgun. Byers then opened the bag and found a .45 caliber semi-automatic pistol with a fully loaded magazine clip and several clips of ammunition. There was a round in the chamber of the pistol. Byers then asked defendant if he had a concealed weapon permit, and defendant admitted that he did not. Byers informed Wickman of his discovery, and they arrested defendant for unlawful possession of a firearm.

Defendant moved to suppress the evidence found in his bookbag. At the suppression hearing, both officers testified that they were not fearful of defendant and did not believe that he posed a threat to their safety. They testified that, although defendant was "understandably" upset that his car was being towed, he was cooperative and truthful with the officers at all times.

The trial court ruled that Wickman's stop of defendant was lawful, that Byers had defendant's consent to open the car door and reach in to take out the bookbag, and that when Byers felt the contents of the bag he believed, with certainty, that it contained a handgun. The trial court ordered the gun suppressed on the grounds that Byers did not have probable cause to open and search defendant's bookbag after feeling the handgun through the material and that the warrantless search of defendant's bookbag was not otherwise justified on officer safety grounds.

The state assigns error to the trial court's suppression of the gun. The state claims that it has "no quarrel with the facts found by the trial court, or about its initial conclusions of law," but it "parts company" with the court when it concluded that the officer could not reach into the bag and retrieve the gun. It argues that, when Byers touched the bag and "immediately knew that it contained a gun," no "further

warrant should be necessary to retrieve something revealed by plain feel." Defendant responds that the facts do not support the state's position because Byers clearly testified that he patted down the outside of the bag because it was "heavy."[2] Thus, defendant contends, the search was not justified. *See State v. Booker*, 110 Or App 6, 9, 820 P2d 1378 (1991) (warrantless search of the defendant's purse only because officer knew purse was heavy violated Article I, section 9, of the Oregon Constitution).[3]

■    When additional activity beyond that available to an ordinary observer is required to obtain information, a "search" under Article I, section 9, has occurred. *See State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994) (field sobriety tests constitute search because officer created situation in which he could observe aspects of the defendant's condition that the officer was otherwise unable to observe); *State v. Campbell*, 306 Or 157, 172, 759 P2d 1040 (1988) (attaching radio transmitter to car to follow its movements constitutes a search); *State v. Dickerson*, 135 Or App 192, 898 P2d 193 (1995) (opening pocketknife is search because it revealed evidence on blade not otherwise exposed to public view). Here, the contents of defendant's bookbag were not open to public view, and Byers' intentional pat-down of the bag was a search. The question, thus, is whether the warrantless search was reasonable.

---

[2] Although the trial court's conclusions of law included a statement that "Byers inadvertently, as he touched the material of the backpack when lifting it out of the car, felt the contents of the bag and with certainty, believed that it contained a handgun," the facts cannot support a finding of inadvertence. For example, Byers testified that he "picked up the bag by the top and it just felt abnormally heavy and didn't seem to be packed full of books" and that the "bag felt heavy, so I just started feeling the bag itself." It is clear from the court's colloquy with the prosecution and defense that all understood that Byers had conducted an intentional pat-down when he retrieved the bag.

[3] Defendant did not cross-assign error to the court's statement of inadvertence. However, in this instance, a cross-assignment was not required. The only ruling at issue here is the trial court's decision to grant defendant's motion to suppress, made after hearing argument that included discussion of the initial pat-down. Defendant's position on appeal regarding the pat-down is an argument that the court was correct in suppressing the evidence but for the wrong reason. *See Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 137 Or App 475, 478 n 2, 905 P2d 848 (1995) (various reasons for ruling on motion are not independently assignable as error and the defendant's argument is merely argument that the court was correct for the wrong reason).

It is undisputed that Byers did not have defendant's consent to search the bookbag. At the time he patted the bag, Byers also did not believe that a crime had been committed. *See State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (to have probable cause to support a warrantless search, the officer must subjectively believe at the time that a crime has been committed and that belief must be objectively reasonable in the circumstances). There was also no evidence that defendant, who had been cooperative, made the officers fear for their safety.

■        The only reason for the search was Byers' explanation that, as a routine procedure, the officers "preferred" to search an item that felt heavy before handing it to a subject.[4] That general practice is grounded in an officer's understandable caution, after an encounter, in returning an item in which weapons could be concealed. However, the constitution requires more than generalized caution to permit a search of personal belongings. It requires specific, articulable facts that the citizen might pose an immediate threat of serious physical injury to the officer. *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). At the time Byers patted down the bookbag, there were no such facts here, and the trial court did not err in suppressing the evidence.

Affirmed.

---

[4] In response to the question of what concerns he had in returning the bag to the defendant, Byers testified:

"When returning anything, a coat, briefcase, anything, my concern would be there would be weapons inside. Giving a defendant or a subject we'd talked to, giving back a coat with a weapon of some sort in it. I would prefer to search it. Obviously. I would prefer to search anything I give back to somebody. Had I picked up a backpack and it felt like it had a coat or something in it, it would be less of a concern to me. The way it had [*sic*] at the time, it felt awkwardly heavy."