Argued and submitted January 28, affirmed August 30, 2000

# STATE OF OREGON,
*Appellant,*

*v.*

# ARETHA LEN REED,
*Respondent.*

## (97C-21727; CA A104112)

9 P3d 738

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Jennelle Hall, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, Public Defender.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

The state appeals from an order suppressing evidence found in defendant's purse in the course of a search incident to her arrest for assault. ORS 138.060(3). The state argues that the trial court erred in suppressing methamphetamine found in film canisters in defendant's purse on the ground that the police officer's use of a flashlight to illuminate one of the film canisters constituted an unlawful search for purposes of Article I, section 9, of the Oregon Constitution. We affirm.

Salem Police Officer Byers stopped defendant's vehicle at approximately 10:00 p.m. on November 17, 1997, after receiving a dispatch concerning an assault by the driver of a similar vehicle. The dispatch indicated that the suspect in the assault was Aretha Reese; Byers ran a check on the license plates of defendant's vehicle and discovered that it was registered to Aretha Reed. Based on this information, he decided to stop the vehicle in order to investigate the assault. Because the dispatch indicated that a weapon had been involved in the assault, Byers removed defendant and her passengers from the vehicle and patted them down, but discovered no weapons. Byers contacted an officer who was at the scene of the assault, determined that defendant was the suspect, and placed her under arrest.

Incident to defendant's arrest, Byers looked in her purse for the handgun used in the assault. The purse was located in defendant's vehicle, and Byers described the lighting in the vehicle at the time as "pretty dim." He therefore used a four-cell flashlight to illuminate the interior of defendant's purse. In a side compartment of the purse, Byers observed three film canisters, one of which was semi-transparent. He stated that he could tell by the weight of that container that it did not contain film and that he "could see through it a white—looked like plastic rolled up and a white thing up against the side." Based on his training and experience, he concluded that that was the type of packaging frequently used for controlled substances. He opened the canister and observed a white powdery substance. He subsequently opened the other film canisters and found similar contents. Byers seized the canisters and their contents.

Defendant was charged with possession of a controlled substance, ORS 475.992, and filed a motion to suppress the evidence found in the film canisters. The trial court agreed with defendant that Byers had exceeded the permissible scope of a search incident to arrest and suppressed the evidence. The trial court found that the officer had probable cause to believe that defendant might have had a gun in her possession at the time of the arrest and therefore could look in her purse for the gun. The court further found, however, that the film canister did not announce its contents and that

"[i]t is not credible to the Court that the Officer would have been able to see these very small ziplock bags through the semi-translucent container without the assistance of some enhancement better than the lighting in this courtroom in order for him to have seen and identified it as contraband[.]"

On appeal, the state argues that the court erred in suppressing the methamphetamine found in the film canisters. The state asserts that Byers lawfully discovered the canisters while searching defendant's purse incident to arrest and that he invaded no protected privacy interest by using his flashlight to illuminate the interior of the purse. Defendant does not take issue with the propriety of her arrest and does not dispute that the officer could search her purse for the gun that was used in the assault. She argues first that the trial court finding quoted above is a finding that the officer's description of viewing the contents of the film canister was "not credible" and that we are bound by that finding because evidence in the record supports it. Defendant also argues that the officer's use of a flashlight to view what otherwise would not have been in plain view was an impermissible search that violated Article I, section 9, of the Oregon Constitution. Although we disagree with defendant's first argument, we agree with her second argument, as explained below.

■     We first address the preliminary question concerning the trial court's factual findings. Defendant suggests that Byers' testimony was that he viewed the contents of the semi-transparent film container without the use of his flashlight and that the trial court's finding that it was "not credible" that he could have seen the contents without some light

enhancement is essentially a finding that the officer lied. The state, on the other hand, suggests at one point that "Officer Byers was able to observe the plastic bindle with the naked eye." We do not read the record of the trial court's finding to support either party's interpretation of the facts. The officer testified that he was using his flashlight to look in defendant's purse because the lighting inside the vehicle was dim. When he testified about finding and examining the film canister, he did not specifically mention that he was continuing to use the flashlight. However, as he found the canister while he was looking in defendant's purse, it is implicit in his testimony that he was using the flashlight at that time. The trial court's factual finding reflects the same understanding. It is also implicit in the officer's testimony, indicating that his initial observations of the canister included an observation that it was light in weight, that he removed the canister from the purse in the course of examining it. We read the trial court's finding as a finding that Byers used a flashlight when examining the semi-transparent film canister that he had removed from defendant's purse and that he would not have been able to see the ziplock bags and white substance within the canister had he not used the flashlight to enhance his view.[1]

■　　At the outset, we point out what is *not* at issue in this case. The state does not argue that the film canister "announced its contents." *See State v. Lanig*, 154 Or App 665, 669, 963 P2d 58 (1998) ("A film canister is not so uniquely associated with the storage and transportation of drugs that, by itself, it suggests that it contains drugs."). Nor does the state suggest that Byers was entitled to search the canister incident to the crime for which defendant was arrested. Rather, the state contends that the officer was entitled to search defendant's purse for a gun incident to her arrest, that the canister came into "plain view" during the course of that search, and that once the officer determined that it was not heavy enough to contain film and observed what appeared to be drug packaging inside, he had reason to believe drugs were contained therein. Defendant does not argue that the

---

[1] The record reflects that the trial judge examined the semi-transparent canister in the courtroom, which she described as "brightly lit," and was unable to tell what the semi-transparent canister contained.

officer's removal of the canister from her purse, as an act distinct from his use of the flashlight, constituted an impermissible search. Thus, the sole issue presented here is whether the actions the officer took to discern the contents of the film canister invaded defendant's privacy interests protected by Article I, section 9.

The state argues on appeal that the use of a flashlight does not implicate a protected privacy interest under Article I, section 9, of the Oregon Constitution. The state relies on *State v. Faulkner*, 102 Or App 417, 794 P2d 821, *rev den* 310 Or 422 (1990), for that proposition. In *Faulkner*, a police officer shined a flashlight into the interior of a pickup truck at night, not as a part of an investigation, but because he was admiring the truck. *Id.* at 419, 421. The officer saw a vial of cocaine on the seat of the truck. This court held that the evidence need not be suppressed, noting that had the observation been made during the day or in some other situation where reliance on the flashlight would have been unnecessary, there would have been no search, and further noting that there was no "impediment to observation other than the shroud of darkness." *Id.* at 420-21. Defendant responds that, in *State v. Bechtold*, 99 Or App 593, 597, 783 P2d 1008 (1989), *rev den* 309 Or 521 (1990), this court held that "[i]t is not unlawful for an officer to use a flashlight to examine the outside of a container and see no more than is visible under normal indoor lighting." Defendant thus maintains that, although use of a flashlight may not be a search if it reveals no more than is otherwise visible in normal lighting, in this case the trial court specifically found that the contents of the film canister were not visible in normal indoor lighting, and, accordingly, the use of the flashlight by Byers was a search. We agree with defendant.

Whether a flashlight or other technological enhancement is used does not determine whether a search has occurred. Rather, the question is "whether the police conduct at issue is sufficiently intrusive to be classified as a search. No search occurs unless the police invade a protected privacy interest." *State v. Wacker*, 317 Or 419, 426, 856 P2d 1029 (1993). Thus, whether a technological enhancement aids observation does not determine whether a search has occurred; the question is whether a privacy interest has been

invaded. In *Wacker*, police officers used a night scope to observe drug activities occurring in a parked car in a tavern parking lot. Use of the night scope, however, was not dispositive in that case. The court held that the defendant had no privacy interest under the circumstances because he was carrying out his activities in the parking lot of an open business in a car with an interior light on, and his activities were visible to passersby: "The open-to-the-public nature of defendant's * * * location and activities in a lighted car in a tavern parking lot during business hours establishes that no government conduct significantly impaired defendant's privacy." *Id.* at 427. Similarly, in *State v. Louis*, 296 Or 57, 59-60, 672 P2d 708 (1983), where the defendant stood naked in the front window of his home, clearly visible from the neighbor's garage and from the street, use of a telephoto lens to gather evidence of the crime of public indecency did not invade his privacy interests.

Placing a semi-transparent film canister in an interior compartment of a purse, however, can scarcely be equated with conducting drug activity in a lighted parking lot in view of passersby or exposing oneself in a window visible from the street. In order for the officer to discern the drug-like packaging contained in the film canister, he had to remove the canister from the purse and direct a beam of light onto it. This case is more akin to *State v. Dickerson*, 135 Or App 192, 898 P2d 193 (1995). In *Dickerson*, we held that, although a police officer was justified in seizing a closed pocketknife, opening the pocketknife constituted an unlawful search in violation of Article I, section 9, of the Oregon Constitution:

> "In this case, to the extent that it 'announced' anything, defendant's closed pocketknife announced only that it contained a blade. Nothing in the pocketknife's appearance gave the officers reason to believe that the blade contained [evidence of the crime under investigation]. Because opening the knife revealed evidence that was not otherwise exposed to public view, it was a search that required probable cause." *Id.* at 195-96 (citations omitted).

The film canister in this case, like the closed pocketknife in *Dickerson*, did not "announce" anything that gave the officer reason to believe that it contained evidence of a

crime. Shining a light into the film canister is similar to opening the knife in *Dickerson*, because it "revealed evidence that was not otherwise exposed to public view." *Id.* Assuming, for purposes of this case, that the officer was entitled to remove the canister from the purse while searching for weapons, his use of the flashlight to illuminate its contents revealed something that was not in plain view. The state argues that the officer's conduct was not sufficiently intrusive to implicate constitutional rights because it was equivalent to "holding the canister up to a lamp, or toward the sun." The record does not support the state's assertion. Rather, the record demonstrates that the trial court examined the canister in a brightly lit courtroom, then made a finding that the drug packaging could only be seen with "the assistance of some enhancement better than the lighting in this courtroom[.]"

We are aware of no case, and the state cites none, that holds that a woman lacks a privacy interest in the contents of her purse. Defendant did not give up that privacy interest simply by choosing to enclose in her purse a container that was semi-transparent and that had contents that could be seen when an officer purposefully shined a flashlight through it. We conclude that defendant had a protected privacy interest in the closed film canister in an interior compartment of her purse. Officer Byers invaded that privacy interest by manipulating the canister in such a manner as to allow him to shine a flashlight through it and illuminate contents that otherwise would not have been visible in normal lighting. The trial court correctly concluded that the evidence contained in the film canisters should be suppressed.

Affirmed.