Argued and submitted February 25, 2020, affirmed April 14, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH LYNN PEEK,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR70954; A168389

485 P3d 292

Defendant crashed his motorcycle onto a bike path, littering the path with debris. Defendant was taken to a hospital, and Officer Byrd remained on the crash scene. When Byrd picked defendant's motorcycle jacket up off the ground to move it out of the path, he noticed that the jacket was heavier on one side than the other. Upon shining a flashlight onto the open jacket pocket, Byrd discovered a gun. The state charged defendant with, among other offenses, felon in possession of a firearm. Defendant moved to suppress the evidence of the firearm, contending that Byrd unlawfully seized the jacket by picking it up from the bike path and unlawfully searched the jacket by shining the flashlight on the open pocket to see the gun, in violation of Article I, section 9, of the Oregon Constitution. The trial court denied the motion, and defendant entered a conditional guilty plea, preserving the right to appeal the denial of his motion to suppress. Defendant appeals and renews the arguments that he made below. *Held*: The trial court did not err in denying the motion. Moving defendant's possessions off of a public thoroughfare when defendant was not present was not a seizure, because it was within the bounds of social norms and did not interfere with defendant's possessory interest in his property. Byrd's discovery of the gun was not a search, because evidence at trial suggested that the gun would have been visible in daylight without the aid of a flashlight.

Affirmed.

John A. Wittmayer, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

## LAGESEN, P. J.

Defendant appeals a judgment of conviction for, among other things, one count of felon in possession of a firearm, ORS 166.270. He assigns error to the trial court's denial of his motion to suppress evidence of the gun that officers found in his jacket pocket after he was injured in a motorcycle crash. We review by "accepting the trial court's supported factual findings and determining 'whether the trial court applied legal principles correctly to those facts.'" *State v. Soto-Navarro*, 309 Or App 218, 223, 482 P3d 150 (2021) (quoting *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993)). "In the absence of an express factual finding, we presume that the trial court found facts consistent with its ultimate conclusion." *State v. Gatto*, 304 Or App 210, 212, 466 P3d 981 (2020). "We will not, however, presume an implicit finding where the record does not support it or where the record shows that such a finding was not part of the trial court's chain of reasoning forming the basis of its ultimate legal conclusion." *Id.* (internal quotation marks omitted). Applying that standard of review, we affirm.

Not long after midnight on a late September morning, defendant crashed his motorcycle, landing on the I-205 bike path near Glisan Street in Portland. Officer Byrd of the Portland Police Bureau, among others, was dispatched to the scene of the accident. When he arrived at about 10 minutes before 1:00 a.m. (by motorcycle himself), EMTs were attending to defendant and had taken off defendant's leather riding jacket. Debris and other items, including defendant's motorcycle, helmet, a shoe, and defendant's jacket, littered the bike path. Other officers secured the crash scene while Byrd interviewed a witness to the crash, Lang. As Byrd was interviewing Lang, the EMTs transported defendant to the hospital in an ambulance.

After he completed the interview, Byrd diagrammed and photographed the crash scene, working with a trainee, Officer Winfield. Then, Byrd began to clean up the scene; the items in the bike path posed a hazard for people riding their bikes on the path. In addition to the need to clear the hazard, Byrd also thought that defendant would likely want

his leather jacket and helmet returned to him and planned to take them to the hospital.

When Byrd picked the jacket up off the ground to move it out of the path, he noticed that "it was considerably heavier on one side" than he expected based on his own experience as a motorcyclist; in Byrd's experience, "if you have a motorcycle jacket usually it's pretty balanced or things on motorcycles are usually pretty balanced." Then, when Byrd set the jacket down on the concrete Jersey barrier separating the bike path from the roadway, he heard the "very familiar thud" reminiscent of the sounds "when clunky metal, heavy things hit other hard cement things."

The sound made Byrd think that there probably was a firearm in the jacket. Borrowing Winfield's flashlight, he shone it on the jacket's front pocket, which was open, and saw the handle and the back of the slide of a gun. Byrd did not open the pocket, move it, or do anything else to it to see the gun, apart from shining the flashlight into it. Byrd "could probably have seen the gun in the pocket had [he] simply looked but [he] wasn't looking for it at first." Once he saw that it was a gun, he removed it from the jacket pocket and, upon determining that it was loaded, unloaded it.

Meanwhile, a blood test at the hospital revealed that defendant's blood alcohol content was 0.175 percent.

As a result of the incident, the state charged defendant with one count of felon in possession of a firearm (Count 1); one count of driving under the influence of intoxicants (Count 2); and reckless driving (Count 3). Defendant pleaded guilty to Count 2 and entered diversion. He then moved to suppress the evidence of the firearm, contending that Byrd unlawfully seized the leather jacket by picking it up from the bike path, in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, and also that Byrd unlawfully searched the jacket by shining the flashlight on the open pocket to see the gun, also in violation of Article I, section 9, and the Fourth Amendment. Defendant did not dispute that, if Byrd acted permissibly up until he saw the gun, then Byrd's seizure at that point was permissible.

The trial court denied the motion. Finding Byrd's account of his conduct credible, it first ruled that Byrd's act of picking up the jacket and moving it to the Jersey barrier did not amount to a seizure. The court ruled further that Byrd did not search the jacket because, when the jacket was "[s]et down on a Jersey barrier, the distinctive sound of the firearm, announced its presence in the pocket of the jacket, and the officer was able to see it without opening the jacket pocket." In the alternative, the court ruled that any seizure occurring at the time that Byrd picked up the jacket was permissible incident to defendant's arrest for DUII.

After the trial court ruled on the motion to suppress, defendant entered a conditional guilty plea agreement, under which defendant conditionally pleaded guilty to Counts 1 and 3 and reserved the right to pursue this appeal of the denial of his motion to suppress.

On appeal, defendant reiterates the state constitutional arguments he made below, contending that the trial court erred when it determined that (1) Byrd's act of picking up the jacket was not a seizure under Article I, section 9, and (2) Byrd's act of shining the flashlight on the jacket's pocket was not a search under Article I, section 9. He also argues that the court erred in its alternative conclusion that any seizure was justified incident to arrest. The state responds that Byrd's act of picking up the jacket was not a seizure as that term has been defined under Article I, section 9; that, if there was a seizure, it was reasonable and not unconstitutional; and that Byrd's use of the flashlight did not amount to an unlawful search on the facts of this case. We agree with the state that, on these facts, no search or seizure occurred.

For purposes of Article I, section 9, "[A] 'seizure' of property 'occurs when an officer significantly interferes with a person's possessory or ownership interest in property.'" *State v. Edwards*, 304 Or App 293, 296, 466 P3d 1034 (2020) (quoting *State v. Fulmer*, 366 Or 224, 229, 460 P3d 486 (2020)). We have located no case holding that the conduct of moving possessions scattered by an accident across a public thoroughfare amounts to a significant interference with an individual's property interests in those possessions,

or holding that an individual's possessory or ownership interest in property safeguards an interest in having the property remain, undisturbed, on a public bike path or roadway. Beyond that, where, as here, the owner is not present, it would be well within social norms for a person—officer or otherwise—to move property obstructing a public thoroughfare, making it difficult to conclude that Byrd's conduct of moving the jacket to the Jersey barrier amounted to a significant interference with defendant's property interests. *See State v. Sholedice/Smith*, 364 Or 146, 162, 431 P3d 386 (2018), *adh'd to as modified on recons*, 364 Or 575, 437 P3d 1142 (2019) (concluding that federal postal inspector did not significantly interfere with the defendants' property interests in mailed package by taking it out of hamper full of mail for dog to sniff for drugs); *cf. State v. Goldberg*, 309 Or App 660, 668-69, 483 P3d 671 (2021) (concluding that officer's conduct of closely inspecting car bumper exceeded the scope of homeowner's implied consent to enter the property because that conduct "exceeded the social norms that one reasonably expects of visitors and exceeded the scope of consent that a reasonable property owner holds out to those visitors seeking to make contact"). Simply put, individuals' protected property interests in their possessions do not extend to a protected interest in the placement of those possessions in a public path that would preclude an officer from moving that property when the individuals are not present and able to do so themselves.[1]

As for whether Byrd searched defendant's jacket, that depends on whether the gun was in Byrd's plain view. Whether it was in Byrd's plain view in this instance turns on the nature of Byrd's use of the flashlight. If the flashlight merely enabled Byrd to see what would have been visible to him in daylight, then Byrd did not conduct a search. *State v. Faulkner*, 102 Or App 417, 420-21, 794 P2d 821, *rev den*, 310 Or 422 (1990). If, however, Byrd would not have been able to see the gun without the use of a flashlight whether it was

---

[1] Whether the situation might be different if defendant had been present at the scene and capable of moving his own property from the bike path is a question for another day. *See Fulmer*, 366 Or at 235 (holding that Article I, section 9, requires officers to notify occupants of a car to be impounded that they have the right to remove their personal possessions from the car).

day or night, then he conducted a search. *State v. Reed*, 169 Or App 456, 463, 9 P3d 738 (2000).

This question—whether Byrd could have seen the gun without the flashlight in daylight—is a factual one and, in ruling that Byrd did not conduct a search through his flashlight use, the trial court necessarily found that the flashlight did not let Byrd see anything more than what he would have seen had he been looking at the jacket in daylight. That finding is supported by the record: Byrd testified that the pocket of the jacket was open, that he did not manipulate the pocket in any way when he trained the flashlight on it, and that, even without the flashlight, he "could probably have seen the gun in the pocket had [he] simply looked but [he] wasn't looking for it at first." All of that allows for the reasonable inference that the gun would have been visible to Byrd through the open pocket in the daylight, such that his use of the flashlight did not amount to a search.

In sum, under these circumstances, Byrd did not seize defendant's jacket and he did not search it. The trial court, therefore, correctly denied defendant's motion to suppress.

Affirmed.